# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MNG 2005, INC., | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:18-cv-01155-JAR |
| PAYMENTECH, LLC, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Motions to Dismiss filed by Defendants Paymentech, LLC (Doc. 46), JP Morgan Chase Bank, N.A. ("Chase") (Doc. 56), and Visa USA, Inc. ("Visa") (Doc. 58). The motions are fully briefed (Docs. 47, 55, 59, 63-66), and ready for disposition. Because the motions involve similar factual issues and legal arguments, the Court will consider them together.

### Background

Plaintiff makes the following allegations in its Amended Complaint (Doc. 24): Plaintiff is a Missouri corporation operating an online cooking-oil business. In April, 2018, Plaintiff entered into a contract with Chase and Paymentech—a wholly-owned subsidiary of Chase—for credit card processing services (the "Merchant Agreement").[1] (Doc. 57-1.)

---

[1] Generally speaking, "matters outside the pleadings are not to be considered, while attachments to the pleadings can be." *Kehoe v. Wal-Mart Stores E., LP*, No. 4:08CV991 HEA, 2009 WL 57143, at *2 (E.D. Mo. Jan. 9, 2009). However, it is also true that "documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

Under the TERMS AND CONDITIONS of the Merchant Agreement, Plaintiff agreed to comply with "all applicable Payment Brand Rules in effect from time to time." (Doc. 59-1 at § 1.3(a).) In addition, Plaintiff promised it would not "submit[] any Transaction that [it] knows or should have known to be either fraudulent, illegal, [or] damaging to the Payment Brand(s)." (*Id*. at § 1.4(n).) Likewise, Plaintiff authorized Chase and Paymentech to "temporarily suspend or delay payment to [Plaintiff] of amounts due under this Agreement," until Plaintiff satisfies its obligations under the Merchant and "executes all documents reasonably requested by Chase [and] Paymentech." (*Id*. at § 4.6(q)(i)-(ii).) Finally, Plaintiff agreed that Chase and Paymentech "may terminate [the Merchant Agreement] *immediately* if . . . [Plaintiff] engages in conduct that creates or could tend to create harm or loss to the goodwill of any Payment Brand." (*Id*. at § 10.3(i)(i).) Visa is a "Payment Brand." (*Id*. at § 18.)

Less than one month after entering into the Merchant Agreement, Chase stopped processing Plaintiff's credit card transactions. Prior to that, Chase withheld more than $66,000 in payments related to purchases by Plaintiff's customers using Visa cards. Chase informed Plaintiff that it had stopped processing transactions and would withhold the payments pursuant to Sections 4.6 and 10.3 of the Merchant Agreement, concluding that the transactions "tend to create harm or loss to the good will of the payment brand." (*Id*. at ¶ 13.) Chase represents that it took action after it was informed by Visa of potentially harmful transactions. (Doc. 57 at 3.)

Plaintiff filed suit in Missouri state court and obtained a temporary restraining order against Defendants, prohibiting them from withholding payments and from "making false and defamatory statements about Plaintiff that Plaintiff is engaged in criminal behavior." (Doc. 1-1 at 23.) Defendants removed the case to this Court on the basis of diversity jurisdiction and the temporary restraining order was dissolved by consent of the parties. (Docs. 1, 22.)

Thereafter, Plaintiff was granted leave to file an Amended Complaint, in which it advanced five claims for relief:

>Count I - Breach of Contract by Paymentech and Chase;
>
>Count II - Libel and Slander by Paymentech;
>
>Count III - Conversion by Paymentech;
>
>Count IV - Breach of Contract by Visa; and
>
>Count VI[2] - Tortious Interference with Contract by Paymentech, Chase, and Visa.

All three Defendants filed motions to dismiss, arguing that the cessation of processing services and withholding of fees were expressly authorized by the Merchant Agreement and that because none of them was aware of any contract between Plaintiff and any third party they could not be liable for interference.

## Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (citations omitted). "When ruling on a motion to dismiss

---

[2] Plaintiff also advanced a claim against Mastercard International, Inc.—Count V—but later dismissed it voluntarily. (Doc. 53.)

[under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

Under the terms of the Merchant Agreement, claims arising from or related to Plaintiff's contract with Chase and Paymentech are governed by Texas law. (Doc. 57-1 at § 16.11.) However, because Visa is not a party to the Merchant Agreement, Plaintiff's tort claim against it is governed by Missouri law.

## Discussion

### *Count I - Breach of Contract by Chase and Paymentech*

Plaintiff first alleges that Chase and Paymentech breached the Merchant Agreement by withholding funds without prior notice and without a formal determination that Plaintiff's conduct violated the terms of the contract, and that doing so was an abuse of the defendants' "reasonable discretion." (Doc. 24 at ¶¶ 21-28.)

Chase and Paymentech argue that they could not have breached the Merchant Agreement because their actions are expressly authorized. (Doc. 57 at 5-7.) As noted, they cite Sections 4.6(q) and 10.3(i) as authority to immediately terminate the contract and withhold funds in the event they determine that Plaintiff's conduct poses a risk to Visa's goodwill. (Doc. 57 at 5-6.) They further assert that the Merchant Agreement does not impose a reasonableness standard; to the contrary, it requires only that a merchant's transactions be potentially harmful. (*Id.*)

The Merchant Agreement does expressly authorize Chase to immediately terminate the contract and to withhold funds until Plaintiff complies with its terms and conditions. Moreover, the Merchant Agreement does not require "reasonable discretion" in making that decision. (*Compare id.* at § 10.3(b) (authorizing immediate termination if Chase "determines, in its reasonable discretion, that Merchant's Transactions present increased or excessive Anticipated

Risks) *with* § 10.3(i) (not imposing any obligation to exercise reasonable discretion).) Chase need only determine that Plaintiff engaged in conduct that "could tend to create harm or loss" to Visa's goodwill. (Doc. 57-1 at § 10.3(i).)

Plaintiff asserts that it "never violated the terms contained in [Section] 10.3 of the Merchant Agreement" (Doc. 24 at ¶ 15), and that it did "nothing that would warrant the immediate termination . . . of the agreement," (Doc. 54 at ¶ 5). The Court construes these assertions to mean Plaintiff did not engage in conduct that would threaten Visa's goodwill.

Accepting Plaintiff's factual assertions as true, the Court concludes that Plaintiff has pled sufficient factual content to support a reasonable inference that Chase and Paymentech improperly terminated the Merchant Agreement. *See Iqbal*, 556 U.S. at 678. Termination and withholding of funds by Chase and Paymentech was authorized so long as Plaintiff engaged in conduct that created or could tend to create harm or loss to Visa's goodwill. (Doc. 57-1 at § 10.3(i)(i). It is not appropriate at this stage for the Court to determine whether that is the case. Accordingly, the Court will deny Defendants' motions to dismiss Count I.

### *Count II – Libel and Slander by Paymentech*

In Count II, Plaintiff alleges that, during multiple phone calls with Plaintiff, Paymentech "accused [Plaintiff] of engaging in illegal activities, thus, casting doubt upon the character of [Plaintiff] . . . based on Paymentech's belief that [Plaintiff] was engaged in the sale of marijuana and/or illegal products." (Doc. 24 at ¶ 30.) Plaintiff alleges that Paymentech's accusations "were subsequently published" when Plaintiff was listed as a terminated merchant. (*Id*. at ¶ 32.) Paymentech responds that Plaintiff's allegations, even accepted as true, fail to set out the required elements of either tort. (Doc. 47 at 9.)

Defamation requires "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4)

damages." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Spoken defamation is slander, *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App. 2005), and written or printed defamation is libel, *Chang v. Linh Nguyen*, 81 S.W.3d 314, 318 (Tex. App. 2001).

Paymentech first argues that statements made during phone calls to Plaintiff cannot satisfy the standard for slander or libel because they were not made to a third party. (Doc. 47 at 9-10.) The Court agrees. No matter how false, defamatory, intentional, or damaging a statement is, it is neither slander nor libel unless it is made to a third party. *Lipsky*, 460 S.W.3d at 593.

Paymentech also argues that placing Plaintiff on the terminated merchant list was not a publication of defamatory information. (Doc. 47 at 10-11.) Plaintiff argues that being put on the list was the "publication of a determination that Plaintiff was engaged in activities which would prevent it from being qualified" for future business dealings. (Doc. 54 at ¶ 21.) Paymentech responds that the reasons for placing a merchant on the list are not published and that, in any event, Plaintiff fails to sufficiently allege that being put on the list harmed its reputation. (Doc. 55 at 4.)

Again, the Court agrees. First, defamation requires the publication of "a false statement of fact." *Lipsky*, 460 S.W.3d at 593. Appearing on a list of vendors excluded from Defendants' payment processing system is not "a false statement of fact," but rather a statement of Plaintiff's current relationship with Defendants (whether that statement accurately reflects Plaintiff's compliance with the Merchant Agreement is a separate matter). Further, there is no allegation that the allegedly defamatory statements regarding the illegality of Plaintiff's business were published when it was listed as a terminated merchant. In addition, Plaintiff's allegation of harm is insufficient; "[c]onclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Fawcett v. Grosu*, 498 S.W.3d 650, 660 (Tex. App. 2016) (quoting *Serafine v. Blunt*, 466 S.W.3d 352, 358 (Tex.App. 2015). Plaintiff's bald assertion that placing it

on the terminated merchant list "caus[ed it] to incur substantial damages" is too conclusory to support a defamation claim. (Doc. 24 at ¶ 32.) Because Plaintiff has failed to state a facially plausible claim of slander or libel, the Court will dismiss Count II.

### *Count III – Conversion by Paymentech*

In Count III, Plaintiff accuses Paymentech of converting the $66,000 in withheld payments. (Doc. 24 at ¶¶ 33-35.) Conversion is an old tort that prohibits "the wrongful exercise of dominion and control over another's personal property, to the exclusion of or inconsistent with the rights of the owner." *Branham v. Prewitt*, 636 S.W.2d 507, 510 (Tex. App.), 643 S.W.2d 122 (Tex. 1982) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444 (Tex. 1971)).

There is no doubt that Paymentech exercised dominion and control over Plaintiff's payment funds to the exclusion of Plaintiff—the legal question is whether Paymentech's exercise was *wrongful*. Paymentech argues that it was authorized to withhold the funds by the Merchant Agreement. (Doc. 47 at 12-13.)

As discussed above, whether the exercise of Paymentech's right under the Merchant Agreement to withhold Plaintiff's funds was proper depends on whether Plaintiff's conduct "could tend to create harm or loss" to Visa's goodwill. (Doc. 57-1 at § 10.3(i).) That is a factual question that is not appropriately addressed at this stage. Accordingly, the Court will deny Paymentech's motion to dismiss Count III.

### *Count IV – Breach of Contract by Visa*

In Count IV, Plaintiff alleges that Visa breached its contract with Plaintiff when it assessed Plaintiff a $25,000 non-compliance fine without warning or a formal determination of non-compliance for Plaintiff's first alleged violation. (Doc. 24 at ¶¶ 36-47.) Relatedly, Plaintiff alleges that Visa's collection of the fine directly from Paymentech was also a violation of the contract.

Visa argues that it never entered into a contract with Plaintiff and that, to the extent Plaintiff seeks to enforce the Visa Core Rules—a list of rules that "govern the relationship between Visa and its Members"—the Rules only govern Visa's relationship with Paymentech and expressly state that they do not constitute a legally binding agreement between Visa and third parties. (Doc. 59 at 5 n.3.) Plaintiff responds that, if Visa was not a party to any binding agreement with Plaintiff, it lacked authority to levy the $25,000 fine. (Doc. 63 at ¶¶ 2-8.)

"It goes without saying that a contract cannot bind a nonparty." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Visa is not a party to the Merchant Agreement and therefore Plaintiff cannot hold Visa liable for breaching the Merchant Agreement. (Doc. 57-1 at 12.) Plaintiff's Amended Complaint does not allege the existence of any other contract. (Doc. 24.) Plaintiff's response in opposition to Visa's Motion to Dismiss references the Visa Core Rules, but Visa is correct that the Rules "do not constitute a contract, promise, or representation or confer any rights, privileges, or claims of any kind as to any third parties." (Doc. 17-3 at 85.)

To the extent the Visa Core Rules are part of the record which this Court may consider, there is no basis to conclude they bind Visa's interactions with Plaintiff. Most importantly, Plaintiff's Amended Complaint never alleges that they do. (Doc. 24.) Moreover, Plaintiff does not allege—and the Court does not believe—that it is a "Member" as defined in the Visa Core Rules. "Member" is defined as "[a] client of Visa U.S.A." and is distinct from a "Merchant" that "accepts a Visa Card for the sale of goods or services." (Doc. 17-3 at 1296.) Accordingly, the Court concludes that Plaintiff's factual allegations, even accepted as true, fail to state a facially plausible claim of breach of contract against Visa. The Court will therefore grant Visa's motion to dismiss Count IV.

*Count VI –Tortious Interference by Paymentech, Chase, and Visa*

In Count VI, Plaintiff alleges that Defendants interfered with Plaintiff's contract with non-party payment processing service provider Signapay when they listed Plaintiff as a "terminated merchant." (Doc. 24 at ¶¶ 51-56.) Defendants argue that none of them was aware of Plaintiff's contract with Signapay and that therefore Plaintiff fails to state a claim of tortious interference. (Docs. 47 at 13-14, 57 at 7-8, 59 at 6-7.)

In Missouri, plaintiffs must prove defendant's knowledge of a contract or relationship to succeed on a claim of tortious interference with that contract or business expectancy. *Smith v. MasterCard Int'l*, No. 4:16-CV-1866-CDP, 2017 WL 103966, at *3 (E.D. Mo. Jan. 10, 2017), *aff'd,* No. 17-1245, 2017 WL 3401312 (8th Cir. July 3, 2017) (quoting *Serv. Vending Co. v. Wal-Mart Stores*, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)). Texas law also requires "actual knowledge of the contract or business relation in question, or knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Steinmetz & Assocs., Inc. v. Crow*, 700 S.W.2d 276, 277-78 (Tex. App. 1985).

Plaintiff fails to allege that any of the Defendants had knowledge of its relationship with Signapay but argues that Defendants knew that listing Plaintiff as a terminated merchant would significantly harm its ability to find payment processing services going forward. (Doc. 63 at ¶¶ 9-14.) The Eighth Circuit has noted that "interference with contractual relations is similar to other intentional torts 'in the sense that the defendant must have either desired to bring about the harm to the plaintiff or have known that this result was substantially certain to be produced by his conduct.'" *City Nat. Bank of Fort Smith v. Unique Structures, Inc.*, 929 F.2d 1308, 1316 (8th Cir. 1991) (quoting *Restatement (Second) of Torts* Ch. 37, at 5 (1977)).

The Court concludes that the principal enunciated in *City Nat. Bank of Fort Smith* informs the analysis of causation rather than knowledge. In this case, even if the Court found that Defendants knew that listing Plaintiff as a terminated merchant was substantially certain to result in termination of Plaintiff's contracts with other payment processors, it could not say that Defendants knew that it would affect Plaintiff's contract with Signapay because Defendants were not aware that the contract even existed. Accordingly, the Court will dismiss Count VI.

### Conclusion

For the foregoing reasons, the Court concludes that Plaintiff's Amended Complaint fails to allege sufficient factual matter, accepted as true, to state a facially plausible claim of defamation against Paymentech, breach of contract against Visa, or tortious interference against Paymentech, Visa, or Chase. *See Iqbal*, 556 U.S. at 678. The Court will therefore dismiss Claims II, IV, and VI. However, the Court concludes that Plaintiff has alleged sufficient factual content to allow the court to draw the reasonable inference that Chase and Paymentech may have breached the terms of the Merchant Agreement and that Paymentech thereby converted Plaintiff's personal property. *Id.* The Court will therefore allow Claims I and II to proceed.

Accordingly,

**IT IS HEREBY ORDERED** that Paymentech, LLC's Motion to Dismiss (Doc. 46), is **GRANTED in part** and that Counts II and VI against Paymentech are **DISMISSED.**

**IT IS FURTHER ORDERED** that JP Morgan Chase Bank, N.A.'s Motion to Dismiss (Doc. 56), is **GRANTED in part** and that Count VI against Chase is **DISMISSED.**

**IT IS FINALLY ORDERED** that Visa USA, Inc.'s Motion to Dismiss (Doc. 58), is **GRANTED** and that all claims against Visa are **DISMISSED.**

Dated this 2nd day of August, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE