UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MNG 2005, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:18-cv-01155-JAR |
| vs. | ) |
| | ) |
| PAYMENTECH, LLC, | ) |
| J.P. MORGAN CHASE & CO., | ) |
| | ) |
| and | ) |
| | ) |
| VISA USA, INC., | ) |
| | ) |
| Serve: CSC-Lawyers Incorporating Service Company, Registered Agent 221 Bolivar Street Jefferson City, MO 65101 | ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

COUNT I - UNFAIR BUSINESS PRACTICES

COMES NOW Plaintiff, MNG 2005, INC., by and through counsel, and for Count I of its Second Amended Complaint, states to the court as follows:

1.  Plaintiff MNG 2005, Inc. (hereinafter "MNG") is a Missouri corporation existing by virtue of law and doing business in the State of Missouri.

2.  Defendant Paymentech, LLC (hereinafter "Paymentech"), is an Ohio corporation doing business within the State of Missouri, and entered into a contract for services for credit card payments with the MNG.

3.  Defendant J.P. Morgan Chase & Co. (hereinafter "Chase") is a Delaware corporation doing business within the State of Missouri, and at all times relevant herein owned Paymentech, and

terminated MNG's credit card processing for alleged violations of the Merchant Agreement that was entered into between MNG and Paymentech. Said Merchant Agreement is attached hereto and marked as Amended Complaint Exhibit 1.

4. Defendant Visa USA, Inc. (hereinafter "Visa"), whose principle business is 900 Metro Center Boulevard, Foster City, California 94404 and doing business in the State of Missouri, is a credit card transaction company that facilitates payments between customers and merchants, and at all times relevant herein, without proper notice and without a legal basis, seized $25,000.00 of MNG's funds that were retained by Paymentech, acting as an agent for Visa, in violation of MNG's rights.

5. On or about April 2, 2018, Chase, by and through its agent, Paymentech, entered into an agreement in which Paymentech would process credit card transactions for MNG.

6. On May 1, 2018, Chase stopped processing credit card payments. Said correspondence is attached hereto and marked as Amended Complaint Exhibit 2.

7. Prior to May 1, 2018, Paymentech stopped transferring batches of settled and refused to settle transactions for purchases made on line with which MNG had an obligation to fill and deliver.

8. MNG was required to fill the orders in the absence of payment since the customers had paid using their Visa and/or Mastercard accounts, even though the payments were withheld.

9. Upon information and belief, before any termination of services, Paymentech withheld and failed to pay over in excess of $66,000.00 in funds due to MNG.

10. The determination made by Chase was due to a "violation" of 10.3 of the Merchant Agreement.

11.    At all relevant times herein, Plaintiff was engaged in the sale of online cooking oils, including CBD oils.

12.    Upon information and belief, Visa was operating under the notion that Plaintiff was engaged in the sale of illegal and/or illicit products and that CBD oil transactions were "brand damaging."

13.    CBD oil is not an illegal substance and is a legal substance derived from the hemp plant.

14.    Chase and Paymentech failed to provide adequate notice and repeatedly ignored MNG's request for resolution status on settlement of the batches and queries regarding the reason for the cessation of processing payments.

15.    Paragraph 10.3 of the Merchant Agreement states that they may terminate the agreement immediately if a "merchant is determined to excess chargebacks, b) that Chase Paymentech determines, in its reasonable discretion, that how about the merchant's transactions increase excessive anticipated risks, c) the representation or warranting agreement, including the application or schedule A is determined to be incorrect in any respect when made or deemed to be made, d) merchant fails to comply with any term, covenant, condition or agreement contained in the agreement, e) a case or other proceeding commenced by or against the merge in any court of competent jurisdiction seeking relief under the bankruptcy code .... f) if Chase Paymentech, in its reasonable discretion, deems merchant to be financially insecure, g) if any payment brand notifies Chase Paymentech or member is no longer willing to accept member's transaction data or requires ... h) merchant or any person controlling merchant business is listed in one or more databases of terminate or high risk merchants maintain by payment brands or merchant engages in conduct that

1) creates could tend to create harm or loss to the good will of the payment brand Chase Paymentech or member or causes Paymentech or member to violate the payment brand moves or rules or applicable law or results in Paymentech member or merchant's participation in any risk based program on the payment brand rules.

16.    MNG was never notified which part of paragraph 10.3 MNG purportedly violated nor was MNG given an opportunity to resolve and/or dispute Chase's determination.

17.    At all times relevant herein, MNG never violated the terms contained in paragraph 10.3 of the Merchant Agreement.

18.    Moreover, inquiries with Paymentech personnel or staff indicated that it was "believed" that Paymentech was suspicious or that they believed MNG was engaged in the sale of illegal substances.

19.    MNG offered to provide a list of products it sells online and offered to make that product list available detailing all of the products it sells, all of which are in conformity with existing law, none of which contained controlled or illicit or illegal substances.

20.    As a result of the termination of the merchant account, Paymentech and Chase then listed MNG as a "terminated merchant," which then triggered the cessation and cancellation of other contracts that MNG had with respect to credit card processing.

21.    On or about June 21, 2018, again without notice, Visa seized $25,000.00 of MNG's funds.

22.    Defendant Visa's determination of brand damaging which resulted in the seizure of $25,000.00 constitutes an abuse of discretion and violates Plaintiff's rights in that the determination by Visa that Plaintiff had engaged in brand damaging conduct effectively precludes Plaintiff from

engaging in substantial commerce inasmuch as Visa's actions, which resulted in a blacklisting of Plaintiff, prevent any bank that does business with Visa to do business with Plaintiff.

23. Effectively, the actions undertaken by Visa effectively eliminate Plaintiff's ability to transact business with Mastercard, American Express, Discover, and any other bank that utilizes the Visa brand.

24. Since 1970, the number of Visa member banks has increased from approximately 1,400 to 14,000 in the United States, and over 22,000 world wide, and U.S. consumers now carry more than 429,000,000 Visa branded credit, debit, commercial, and pre-paid cards.

25. Likewise, Mastercard, since its inception, now includes over 23,000 member banks world wide, and there are currently in excess of 337,000,00 Mastercard branded cards in the United States.

26. Visa's dominance in the credit card industry has led to its dominations of over debit/credit networks and their card processing networks.

27. In effect, the actions undertaken by Visa by simply determining that Plaintiff engaged in brand damaging activity by selling legal CBD products derived from hemp have effectively precluded Plaintiff's ability to utilize the leading and most dominant payment methods throughout the United States, North America, Europe, and parts of Asia.

28. Visa's actions require all banks the process under the Visa brand to adhere to their determination of a blacklisted merchant.

29. Visa's actions concerning Plaintiff's sales of cooking oils, particularly CBD oils and related products, is undertaken without any legitimate business purpose or function, but, rather, solely based on Visa's determination that Plaintiff engaged in brand-damaging activity.

30. The agreement signed between Plaintiff and Paymentech and Chase obligates Plaintiff to adhere to Visa's terms and conditions.

31. None of the rules promulgated by Visa define brand damaging with any specificity.

32. Further, none of Visa's guidelines or rules provide for a procedure to challenge a determination of brand damaging.

33. Plaintiff asserts that Visa's determination of brand damaging, as exercised herein, is undertaken for the purpose of favoring larger retailers who offer a significantly greater profit margin and enhanced reward programs for Visa cardholders over smaller businesses and merchants who cannot match the volume of their larger merchant counterparts.

34. Specifically, Visa permits the processing of merchant transactions utilizing Paymentech and Chase that sell CBD products and other products derived from hemp, such as the sale of hemp and CBD products sold by Costco, Amazon, Nieman Marcus, Sephora, Walmart, and dozens of other larger merchant retailers, but does not make a determination that their sale of CBD related oils and/or products constitute brand damaging behavior.

35. In the very brief "life" of this agreement, Plaintiff did not engage in any of the actions that would have resulted in termination as set forth in paragraph 15 *supra*.

36. Visa's conduct constitutes an unlawful restraint of Plaintiff's ability to trade in favor of larger merchant retailers that can accommodate Visa's reward programs, loyalty programs, incentive programs, and are, therefore, a discriminatory business practice.

37. Because of the vastness in which Visa operates, and because of its significant market share and control of market share, merchants that want to continue doing business with Visa and

banks that want to process Visa transactions, no single business entity can afford to challenge Visa without the risk of a determination that that conduct could be determined as brand damaging.

38. Merchants and banks must continue to adhere to Visa's regulations or be closed out of Visa's business.

39. Visa's market power is a matter of law. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 203 WL 1712568 (ED New York, April 1, 2003).

40. In this case, Visa has a determination that Plaintiff engaged in brand damaging conduct, i.e. the sale of CBD oils and CBD-related products, has effectively cut off Plaintiff from any credit/debit card processor or any bank that utilizes or accepts the Visa brand.

41. For all practical purpose, this precludes Plaintiff from transacting business with any bank in the United States that honors or processes transactions with the Visa brand because Visa's determination places Plaintiff on a "blacklist."

42. Further, Visa's U.S.A. Operating Agreement, Regulation 1.15, specifies that, "Visa has no liability of any nature to any member arising from any cause or circumstance." Regulation 1.15(a) clarifies that the liability limitation "applies to all products, programs, services, specifications, standards, or other matters or items provided by Visa and its member banks." Therefore, if a merchant determined that it was harmed by Visa's regulations, it is prevented from suing Visa.

43. The actions that were taken by Visa, collectively with Paymentech and Chase, are an unlawful restraint on competition, specifically, and are not reasonably related to the operations of Visa; and, even if they were reasonably necessary, they are more restrictive than necessary to effectuate the business purpose of Visa.

44.     As a result, Visa and Paymentech and Chase are liable for damages under Section 4 of the Clayton Act; and 15 U.S.C §15 for violations of the Sherman Act; and for its unlawful actions as stated herein.

WHEREFORE, Plaintiff prays for judgment against Defendants herein, each jointly and severally, for actual damages in excess of $500,000.00 and for punitive damages in the amount of $1,000,000.00, and for such other and further orders this court deems just and proper in the premises.

## COUNT II AGAINST PAYMENTECH AND CHASE - CONTRACT

COMES NOW Plaintiff, MNG 2005, INC., by and through counsel, and for Count II of its Second Amended Complaint, states to the court as follows:

45.     Plaintiff restates and realleges the averments contained in paragraphs 1 through 44 of Plaintiff's Second Amended Complaint as if same were more fully set forth hereafter.

46.     By withholding funds without notification to MNG, Paymentech withholding MNG's funds in the absence of a determination violates the terms of their merchant agreement in that was MNG provided thirty days notice and that MNG did not have excessive chargebacks.

47.     Further, there would be no basis to determine that MNG's transactions presented increase or excessive anticipated risks or affected, adversely or otherwise, the payment brand.

48.     As a result of the termination, MNG has lost the contracts with other credit card processors based on Paymentech and Chase's placement of MNG on the terminated merchant list.

49.     Paymentech did not respond to repeated requests to resolve or for an accounting of the determination which necessitated the filing of a temporary restraining order in the Circuit Court of the County of St. Louis, State of Missouri, in Cause Number 18SL-CC01413.

50. Paymentech and Chase wrongfully terminated the contract in that said termination was not justified and Paymentech and Chase abused its "reasonable discretion" to find that MNG had violated the terms of the agreement.

51. Further, by placing MNG on the terminated merchant list, MNG cannot obtain credit services from any or credit card services for processing from any provider.

52. As a result of Paymentech's and Chase's breach and the conduct described herein, MNG has been damaged and will continue to incur damages in an amount in excess of $75,000.00.

WHEREFORE, Plaintiff prays for judgment against Defendants Paymentech and Chase for damages in excess of $75,000.00, and for such other and further orders this court deems just and proper in the premises.

### COUNT III AGAINST PAYMENTECH - CONVERSION

COMES NOW Plaintiff, MNG 2005, INC., by and through counsel, and for Count III of its Second Amended Complaint, states to the court as follows:

53. Plaintiff restates and realleges the averments contained in paragraphs 1 through 52 of Plaintiff's Second Amended Complaint as if same were more fully set forth hereafter.

54. Paymentech has withheld, without right or permission, funds belonging to MNG in the amount of $66,000.00.

55. Paymentech is responsible for conversion in that MNG was damaged.

WHEREFORE, Plaintiff prays for an order of this court awarding MNG $66,000.00 plus attorney's fees and costs, and for judgment against Paymentech for damages in excess of $75,000.00 for unlawful conversion, and for such other and further orders this court deems just and proper in the premises.

LAW OFFICE OF NATHAN S. COHEN

BY:  /s/ Nathan S. Cohen
Nathan S. Cohen, #36072
Attorney for Plaintiff
210 South Bemiston Avenue
St. Louis, MO 63105
(314) 727-6088 - Telephone
(314) 727-6081 - Facsimile
nathan@nathanscohen.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true copy of the foregoing was electronically filed on September 26, 2019 with the Clerk of the United States District Court, Eastern District of Missouri, by using the CM/ECF filing system, and that participants in the case who are registered users will be served by the system.

/s/ Nathan S. Cohen