UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MNG 2005, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-01155-JAR |
| | ) | |
| PAYMENTECH, LLC, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
COMBINED MOTION TO DISMISS THIRD AMENDED COMPLAINT**

**I.     INTRODUCTION**

Plaintiff's new claims for "unfair business practices" (Count I) and unjust enrichment (Count III) against JPMorgan Chase Bank, N.A. ("Chase"), Paymentech, LLC ("Paymentech"), and Visa USA, Inc. ("Visa") in the Third Amended Complaint (ECF 86) ("Complaint" or "Compl.") are woefully deficient. As best Defendants can tell, Plaintiff's claim for "unfair business practices" is an attempt to allege a federal antitrust claim based on a jumbled mess of conclusory (and in many cases incorrect) allegations related to the events surrounding the termination of the Merchant Agreement. The numerous fatal defects in Count I (discussed in detail below) include Plaintiff's wholesale failure to identify the antitrust law or laws that are the basis for Plaintiff's claim, i.e., what statutes Plaintiff believes Chase, Paymentech, and Visa purportedly violated. The allegations in the Complaint also fail to meet the well-established standards for pleading a federal antitrust claim under the Sherman Act—e.g., Count I fails to properly allege antitrust injury, concerted action, or define the relevant market. Plaintiff's unjust enrichment claim fares no better because the subject matter of the parties' dispute is expressly covered by the Merchant Agreement.

## II.      BACKGROUND

### A.      The Parties.

Plaintiff is a Missouri corporation that sells Cannabidiol ("CBD"), Kratom[1], and hemp products. Compl., ¶ 1[2]. Paymentech provides payment processing services—e.g., credit and debit card processing—to various merchants. Compl., ¶ 2. Visa is a Payment Brand[3] that provides much of the necessary infrastructure to support financial institutions in issuing and processing debit and credit card transactions. Compl., ¶ 4[4]. Chase is a national bank and Member of the Visa Payment Brand. Compl., ¶ 3; Ex. 1 at 23. Chase provides sponsorship to Paymentech as required by all applicable Payment Brands. Ex. 1 at 23.

### B.      Relationship Between Chase, Paymentech, And Plaintiff.

On April 2, 2018, Plaintiff submitted a Merchant Application and Agreement ("Merchant Agreement") to Paymentech in order to establish a merchant account with Paymentech. Compl. ¶ 5.[5] In the Merchant Agreement, Plaintiff represented to Paymentech that it would be using Paymentech's services to process card payments for "cooking oils" it sold over the internet through the website www.ckrtoils.com. Ex. 1 at 7. The Merchant Agreement is signed by Plaintiff's

---

[1] The DEA classifies Kratom as a "Drug and Chemical of Concern." https://www.dea.gov/taxonomy/term/311 (last visited 1/14/2020). The DEA defines Kratom as follows: "Kratom is a tropical tree native to Southeast Asia. Consumption of its leaves produces both stimulant effects (in low doses) and sedative effects (in high doses), and can lead to psychotic symptoms, and psychological and physiological dependence." https://www.dea.gov/sites/default/files/sites/getsmartaboutdrugs.com/files/publications/DoA_2017Ed_Updated_6.16.17.pdf#page=84 (last visited 1/14/2020).
[2] See https://www.shopcbdkratom.com/ (last visited 1/14/2020)
[3] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Merchant Agreement (Exhibit 1) between Chase, Paymentech, and Plaintiff.
[4] See https://usa.visa.com/about-visa.html (last visited 1/14/2020)
[5] A copy of the Merchant Agreement is attached hereto as Exhibit 1. The Court may consider the Merchant Agreement without converting this to a motion for summary judgment because is necessarily embraced by the Third Amended Complaint. See Gorog v. Best Buy Co., Inc., 760 F.3d 787, 791 (8th Cir. 2014) (affirming district court's reliance on a contract submitted in support of a Rule 12(b)(6) motion to dismiss was proper because the contract was necessarily embraced by the amended complaint); see also Stahl v. U.S. Dept. of Agriculture, 327 F. 3d 697, 700 (8th Cir. 2003) ("In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.").

President who represented and warranted "that all information contained within the Application as well as any information submitted in conjunction with the Application is true, complete, and not misleading." Ex. 1 at 11.

Paymentech approved Plaintiff's application based on the information and representation provided by Plaintiff, and agreed to acquire and process Plaintiff's Payment Card Transactions subject to the terms and conditions in the Merchant Agreement.  Plaintiff agreed to pay Paymentech for the services "and to comply with the Payment Brand Rules, Security Standards, operating procedures and all applicable laws." Ex. 1 at 7; *see also* Ex. 1 at § 1.3 ("[Plaintiff] agrees to comply with: (a) all applicable Payment Brand Rules in effect from time to time.").  Plaintiff further represented and warranted that it has not "submitted any Transaction that [Plaintiff] knows or should have known to be . . . damaging to the Payment Brand(s) . . . ."  Ex. 1 at § 1.4(n).

**B.     Termination Of The Merchant Agreement By Paymentech.**

In late April 2018, Paymentech was notified by Visa that Plaintiff had submitted transactions to Visa's network that Visa considers brand-damaging.  Paymentech then began withholding funds payable to Plaintiff and placed those funds in a reserve account established pursuant to Section 4.6 of the Merchant Agreement.  Compl., ¶ 9.  On May 1, 2018, Paymentech stopped processing payment card transactions for Plaintiff and terminated the Merchant Agreement.  *See* Compl., ¶¶ 6-7.  Paymentech terminated the Merchant Agreement pursuant to Section 10.3(i).  *See* Compl., ¶¶ 10, 15-16, 20.  Section 10.3(i) allows Paymentech to terminate the Merchant Agreement "***immediately*** if: . . . (i) [Plaintiff] engages in conduct that (i) creates or could tend to create harm or loss to the goodwill of any Payment Brand, Chase Paymentech, or Member; or (ii) causes Paymentech or Member to violate the Payment Brand Rules or applicable law; or (iii) results in Paymentech's, Member's, or [Plaintiff's] participation in a risk-based program under

the Payment Brand Rules." Ex. 1 at § 10.3(i) (emphasis in original).  On or about May 29, 2018, Visa issued a $25,000 non-compliance assessment to Paymentech as a result of Plaintiff's submission of brand-damaging transactions. Compl., ¶¶ 21-22.

### C. Relevant Procedural History.

Plaintiff's First Amended Complaint ("FAC") alleged six claims for relief against Paymentech, Chase, Visa, and Mastercard International Incorporated ("Mastercard").  Plaintiff voluntarily dismissed its claims against Mastercard on October 5, 2018.  ECF 53.  On August 2, 2018, this Court entered an order dismissing Plaintiff's claims against Visa's, and granting in part and denying in part motions to dismiss filed by Chase and Paymentech.  ECF 67.  Paymentech filed a motion for reconsideration of the Court's ruling on Plaintiff's conversion claim on August 14, 2018.  ECF 68  On October 15, 2018, the Court granted Paymentech's motion for reconsideration and dismissed Plaintiff's conversion claim.  ECF 82. The Court also granted Plaintiff leave to file another amended complaint. *See id*.

On November 25, 2019, Plaintiff filed the Complaint. *See* ECF 86. The Complaint asserts the following three claims for relief:  (Count I) Unfair Business Practices against Chase, Paymentech, and Visa; (Count II) Breach of Contract against Paymentech and Chase; and (Count III) Unjust Enrichment against Paymentech and Visa. ECF 86.  Against

### III. LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry." *Willis v. Buckner*, No. 4:09CV1108 CDP, 2009 WL 2382771, *1 (E.D. Mo. July 31, 2009). "First, the Court must identify the allegations in

the complaint that are not entitled to the assumption of truth." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "These include 'legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "Second, the Court must determine whether the complaint states a plausible claim for relief." *Id.* (citing *Iqbal*, 556 U.S. at 678-79). "This is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

"The plaintiff is required to plead facts that show more than the 'mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The Court must review the factual allegations in the complaint 'to determine if they plausibly suggest an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 681). "When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred." *Id.* (citing *Iqbal*, 556 U.S. at 678-82). Under these standards, the claims against Chase, Paymentech, and Visa should be dismissed.

## IV.   ARGUMENT

### A.   The Court Should Dismiss Count I (Unfair Business Practices) Because Plaintiff's Allegations Fail To State A Cognizable Antitrust Claim Against Chase, Paymentech, Or Visa.

Count I is generically entitled "Unfair Business Practices." The forty-five paragraphs that make up the claim meander through a recitation of Plaintiff's various perceived grievances against Chase, Paymentech, and Visa relating to the termination of the Merchant Agreement, and include a hodgepodge of muddled references to unspecified business torts, breaches of contract, and non-specific antitrust terminology. Plaintiff concludes Count I by asserting that Visa, Paymentech, and

Chase "are liable for damages under Section 4 of the Clayton Act; and 15 U.S.C. § 15 for violations of the Sherman Act." Compl., ¶46. The Court should dismiss Count I because Plaintiff's various allegations do not assert a plausible antitrust claim against Chase, Paymentech, or Visa.

        1.        <u>Count I Fails To Meet Basic Pleading Requirements For Antitrust Claims</u>.

Antitrust claims are reviewed carefully at the pleading stage because false condemnation of competitive conduct threatens to "chill the very conduct the antitrust laws are designed to protect." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 414 (2004) (internal quotation marks omitted). "Enough facts" must be pleaded "to state a claim to relief that is *plausible on its face*," and claims that are merely "conceivable" require dismissal. *Twombly*, 550 U.S. at 570 (emphasis added). In *Twombly* (which was an antitrust case), the Supreme Court noted that going forward, complaints should be more rigorously examined (than in past practice) so as to limit plaintiffs from starting the costly process of civil discovery and extracting unjustified settlements from defendants. *Id.* at 559-60. Because direct evidence of an agreement is often lacking in conspiracy cases, additional evidence of assent to participate in collusive conduct, or "plus factors," are required. *Id.* at 566 & n.4. Conclusions couched as facts are not enough. *See Iqbal*, 566 U.S. at 678-79 (applying *Twomby* to all federal civil actions).

The allegations in Count I fall woefully short of these pleading requirements. At most, Count I contains smidgeons of antitrust "static noise," stating in conclusive fashion that Visa has "significant market share and control of market share" (Compl., ¶ 39), that Visa has "market power as a matter of law" (*id.*, ¶ 41), and that "[t]he actions that were taken by Visa, collectively with Paymentech and Chase, are an unlawful restraint on competition, specifically, and are not reasonably related to the operations of Visa; and, even if they were reasonably necessary, they are more restrictive than necessary to effectuate the business purpose of Visa." *Id.*, ¶ 45. Plaintiff

attempts to tie these disparate allegations together in Paragraph 46 by citing (confusingly)[6] to the private right of action provision of the federal antitrust laws. *See* Compl., ¶ 46 ("Visa and Paymentech and Chase are liable for damages under Section 4 of the Clayton Act; *and* 15 U.S.C §15 for violations of the Sherman Act; and for its unlawful actions as stated herein."). The generic conclusory allegations in Count I are a far cry from the rigorous requirements of *Twombly* and *Iqbal*, and merely citing to the private right of action provision of the federal antitrust statutes (Clayton Act § 4) does not convert those deficient allegations into a cognizable antitrust claim.

Count I is also defective from a high level because it is impossible to ascertain whether Plaintiff intends to assert only a Sherman Act claim (and not a Clayton or Robinson-Patman Act claim) and if so, whether Plaintiff is asserting a claim under Section 1 or Section 2 of the Sherman Act. Plaintiff's failure to properly identify its claim is fatal because Section 1 and Section 2 of the Sherman Act are entirely different in their application and in the allegations necessary to plausibly allege a claim. Section 1 of the Sherman Act addresses collusive conduct and requires concerted action between two or more independent actors to *unreasonably* restrain trade: "Every contract, combination . . . or conspiracy, in restraint of trade . . . is declared to be illegal." 15 U.S.C. § 1; *see also Copperweld Corp. v. Independent Tube Corp.,* 467, U.S. 752, 767-68 (1984) (§ 1 does not reach conduct that is 'wholly unilateral'"); *see also Monsanto v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 767-68 (1984). In contrast, Section 2 addresses monopolization and can be unilateral

---

[6] It appears from Paragraph 46 that Plaintiff perhaps intends its claim to arise under both the Clayton Act *and* the Sherman Act. That presents a muddled and confusing landscape because 15 U.S.C. § 15 is simply the codification of Section 4 of the Clayton Act. Section 4 of the Clayton Act establishes a private cause of action for damages under the federal "antitrust laws." 15 U.S.C. § 15(a). Section 4 of the Clayton Act is not itself a substantive statute (i.e., a person cannot "violate" Section 4.) Section 1 of the Clayton Act defines the substantive "antitrust laws" (referenced in Clayton Act § 4) to include the Sherman Act, the Clayton Act, parts of the Wilson Tariff Act, and Section 2 of the Robinson-Patman Act (because it is an amendment to the Clayton Act). Plaintiff never bothers to identify—let alone sufficiently plead—*which* of these entirely different underlying *substantive* antitrust statutes (if any) it is alleging are violated.

conduct by a single firm, by making it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce . . . ." 15 U.S.C. § 2.  Count I contains a smattering of both Section 1 and Section 2 type references, but is grossly inadequate to properly allege a claim under either Section.  For example, in Paragraph 38, Plaintiff alleges that "Visa's conduct constitutes an unlawful restraint of MNG's ability to trade," which uses Section 1's "unlawful restraint of trade" language, but does so in relation to a *single actor* (Visa), which can only arise in the context of a Section 2 claim.  These pleading defects are fatal to Plaintiff's "Unfair Business Practices" claim.

2.  Plaintiff Fails To (And Cannot) Allege Antitrust Injury.

"Antitrust injury" is a "substantive element of an antitrust claim, and the fact of injury or damage must be alleged at the pleading stage." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013). "'Antitrust injury' means 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful,'" and "consists of four elements: '(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).  Plaintiff never connects any alleged individual injury (resulting from the vaguely alleged breaches of the Merchant Agreement) to overall harm on the relevant market or to competition, which is fatal to its claim.

The Eleventh Circuit addressed this issue in *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.* stating:

> As with the Section One claims, [plaintiff] essentially *urges us to equate harm to it with harm to competition as a matter of law. We do not believe the law supports this proposition.* While some of these specific practices might be characterized as unsavory, or even illegal under other laws, they do not give rise to a federal antitrust

claim without factual allegations specifically addressing how these practices have harmed competition. As the Supreme Court has stated, *the antitrust laws "do not create a federal law of unfair competition* or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce."

376 F.3d 1065, 1076 (11th Cir. 2004) (emphasis added) (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225 (1993) (internal quotation marks and footnote omitted)). Here, Plaintiff attempts to allege injury only to *its* business, not competition in a relevant market. Claimed destruction of, or harm to, an individual business is not an antitrust injury. *See Paladin Assoc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury").

Antitrust laws concern "protection of competition, not competitors[.]" *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962); *Spanish Broad. Sys. of Fla., Inc.*, 376 F.3d at 1075-1076 ("As with Section One claims, conduct that injures individual firms rather than competition in the market as a whole does not violate Section Two.") (internal quotations and citation omitted). "It is the impact upon competitive conditions in a definable market which distinguishes the antitrust violation from the ordinary business tort." *McGlinchy*, 845 F.2d at 812-13. Here, the nature of the purported antitrust claim Plaintiff attempts to allege belies that the alleged injury Plaintiff complains of is "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 487-89 (1977) (antitrust violations can cause "losses which are of no concern to the antitrust laws" and "plaintiffs . . . must prove more than injury causally linked to an illegal presence in the market"). Indeed, what Plaintiff alleges as "collective action" (Compl., ¶ 45) is already pursued as a state common law claims for breach of contract and unjust enrichment in the Complaint. *See* Count II (breach of contract); Count III (unjust enrichment).

### 3. Plaintiff Fails To Allege A Relevant Market.

To state a claim under Section 2 of the Sherman Act, Plaintiff must allege that a single defendant has (1) monopoly power in a properly defined relevant market (both product and geographic), (2) acquired, enhanced, or maintained that power by the use of exclusionary conduct "as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident," and (3) has caused antitrust injury by its conduct." *Verizon,* 540 U.S. at 408 (2004) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71).  In other words, a Section 2 monopolization claim requires that the plaintiff define a relevant product market which then serves as the backdrop for determining if the defendant has sufficient market share to constitute "monopoly power."  The only verbiage in Count I that is even *potentially* "Section 2-related" is the statement that *Visa* (not Paymentech or Chase) has "significant market share and control of market share" (¶ 39), and that Visa (not Paymentech or Chase) has "market power as a matter of law" (¶ 41) (citing a seventeen year old case from the Eastern District of New York).[7] Nowhere does Plaintiff define a market (the term "market" is used only in the two paragraphs as quoted above).  Nor does Plaintiff allege that any actor has *monopoly* power or otherwise allege that monopoly power was wielded so as to gain or maintain that power.  The absence of these essential allegations mandate dismissal of Count I as to any potential Section 2 claim.

To the extent Plaintiff intended to allege a claim under Section 1 of the Sherman Act, it should also be dismissed for failure to define a relevant market.  Any claim of "concerted action" that could possibly be derived from Count I's vague allegations is not between horizontal competitors, and it would therefore necessarily be assessed under the Rule of Reason.  *See Texaco*

---

[7] Plaintiff also makes the impermissibly conclusory assertion that "Visa's dominance in the credit card industry has led to its dominations of over debit/credit networks and their card processing networks."  Compl. ¶ 26.

- 10 -

*v. Dagher*, 547 U.S. 1 (2006) ("This Court presumptively applies rule of reason analysis."). A Rule of Reason assessment requires Plaintiff to establish that the alleged restraint has a substantial, adverse effect on competition, which in turn requires a definition of the relevant market. Without defining the relevant market, there can be no meaningful context within which to assess the alleged restraint's potential competitive effects. *See, e.g., Copperweld*, 467 U.S. at 768 (noting that the Rule of Reason is "an inquiry into market power and market structure designed to assess the combination's actual effect.").

    4. <u>Plaintiff Fails To Adequately Allege Concerted Action Necessary To Support A Claim Under Section 1 Of the Sherman Act</u>.

It is well-established that a plaintiff must allege concerted action between two or more actors in order to state a claim under Section 1 of the Sherman Act. *E.g.*, *Copperweld Corp.,* 467, U.S. at 767-68 (§ 1 does not reach conduct that is 'wholly unilateral'"). Because direct evidence of an agreement is often lacking in conspiracy cases, additional evidence of assent to participate in collusive conduct, or "plus factors," are required. *Twombly*, 550 U.S. at 566 & n.4. Conclusions couched as facts—such are the allegations in Count I—are not enough. *Iqbal*, 566 U.S. at 678-79.

Count I contains only the barest allegation of concerted action, and it is stated as a conclusion: "The actions that were taken by Visa, collectively with Paymentech and Chase…." ¶ 45. There are no allegations as to what this supposed "collective" action was, when it occurred, or who participated—let alone the requisite "plus factors." Moreover, as noted above, the referenced "actions that were taken" are *not* alleged as "collective actions." Rather, the allegations are directed at actions by Visa (supposed determination of "brand damaging" conduct by Plaintiff) that are *entirely separate* and distinct from the supposed breaches of the Merchant Agreement that are alleged against Paymentech and Chase. But even assuming *arguendo* that Plaintiff had alleged circumstantial evidence of concerted action (it didn't), the Supreme Court has warned against

- 11 -

drawing inferences from such evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 594 (1986) ("[M]istaken inferences in cases such as this one are especially costly, because they chill the very conduct the antitrust laws are designed to protect."). "[A]ntitrust law limits the range of permissible inferences from ambiguous evidence in a Section 1 case. Thus . . . conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id.* at 588; *see Twombly,* 550 U.S. at 556-57.

Viewing the allegations in the light most favorable to Plaintiff, the only possible "restraints" that could be divined from Count I are those that were imposed vertically and *unilaterally*. Plaintiff references the Merchant Agreement and alleges that Chase (as owner of Paymentech) "terminated [Plaintiff's] credit card processing for alleged violations" of that agreement. (¶¶ 3, 10, 15-17). This purported "restraint" lacks the requisite concerted action because, under the "*Copperweld* doctrine," Paymentech and Chase are incapable of conspiring with each other. *See* Compl., ¶ 3 ("Defendant JPMorgan Chase Bank, N.A. . . . at all times relevant herein owned Paymentech . . . ."); *Copperweld Corp.,* 467, U.S. at 771 (holding that "the coordinated activity of a parent and its wholly-owned subsidiary must be viewed as that of a single enterprise for purposes of Section 1 of the Sherman Act"); *see also American Needle, Inc. v NFL,* 560 U.S. 183, 200 (2010) (noting that as a general rule, single-firm agreements will be treated as unilateral action). Likewise, the "restraint" supposedly imposed by Visa with respect to identifying Plaintiff's conduct as "brand damaging" are alleged to have been the result of *unilateral* action taken solely *by Visa*. *See* Compl., ¶ 38 ("Visa's conduct constitutes an unlawful restraint of MNG's ability to trade in favor of larger merchant retailers . . . ."); ¶ 42 ("In this case, Visa has a determination that MNG engaged in brand damaging conduct . . . ."); ¶ 43 ("For all practical purpose, this precludes MNG from transacting business with any bank in the United

States that honors or processes transactions with the Visa brand because Visa's determination places MNG on a 'blacklist'.").

5.   Plaintiff's <u>*Ad Damnum* Clause Is Defective</u>.

In its prayer for relief Plaintiff seeks "judgment against *Defendants Chase and Visa*, each jointly and severally, for actual damages in excess of $500,000.00 and *for punitive damages* in the amount of $1,000,000.00." Compl., Count I, *ad damnum* clause (emphasis added). Plaintiff request for punitive damages should be stricken because punitive damages are not recoverable under Section 4 of the Clayton Act. *See McDonald v. Johnson & Johnson Co.*, 722 F.2d 1370, 1381 (8th Cir. 1983). Paymentech is also entitled to dismissal of Count I on the grounds that no relief whatsoever is sought against it in Count I's *ad damnum* clause.

**B.   The Court Should Dismiss Count III (Unjust Enrichment) Because The Parties' Relationship Is Governed By The Merchant Agreement.**

Plaintiff's unjust enrichment claim is premised on Paymentech's establishment of the reserve account and Paymentech's payment of the $25,000 Visa non-compliance assessment. *See* Compl., ¶ 56. The Court should dismiss Plaintiff's unjust enrichment claim because the withholding of funds and payment of the non-compliance assessment are governed by the express terms of the Merchant Agreement. Section 4.6 of the Merchant Agreement allows Paymentech to suspend or delay payments to Plaintiff of amounts due under the Merchant Agreement and to use those funds to establish a reserve account that is held and controlled by Paymentech *See* Ex. 1 at § 4.6. Section 4.6 further provides that Paymentech may hold the funds in the reserve account until Plaintiff "satisfies all of its obligations under [the Merchant] Agreement" and "executes all documents reasonably requested by [Paymentech] in connection with the return of any Reserve Account funds." *Id.* Section 9.2 states fees owed to Plaintiff "may be adjusted at any time" "to reflect additional fees imposed by the Payment Brands." Ex. 1 at § 9.2(c). Section 11 provides

that Plaintiff will indemnify Chase and Paymentech for any "losses, liabilities, and damages of any and every kind . . . arising out of or related to . . . any assessment, fine, or penalty imposed on [Paymentech] or [Chase], and any related loss, cost, or expense incurred by [Paymentech] or [Chase]," and "any claim, complaint, or Chargeback . . . caused by [Plaintiff's] noncompliance with [the Merchant Agreement], applicable law, or the Payment Brand Rules."  Ex. 1 at §11(b) and (c)(ii).

It is black letter law in Missouri and Texas[8] that a party cannot maintain a claim for unjust enrichment where the subject matter of the dispute is covered by the terms of an express contract. *See, Howard v. Turnball*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010); *Lowe v. Hill*, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014) (citing *A & L Underground, Inc. v. Leigh Const., Inc.*, 162 S.W.3d 509, 511 (Mo. Ct. App. 2005)) ("It is a well-settled principle of law that implied contract claims arise only where there is no express contract."); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) ("Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, with certain exceptions not relevant here. That is because parties should be bound by their express agreements. When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement."); *see also Affordable Communities of Missouri v. Federal Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013) (affirming district court's dismissal of unjust enrichment claim because a plaintiff may not recover under both an express contract and unjust enrichment under Missouri law).[9]

---

[8] The parties agreed that the Merchant Agreement is governed by and construed in accordance with the laws of the State of Texas without reference to conflict of law provisions.  *See* Ex. 1 at § 16.11.

[9] Although the Federal Rules of Civil Procedure allow Plaintiff to plead alterative claims (*see* Fed. R. Civ. P. 8(d)(2)), Plaintiff does not allege Count III in the alternative to Count II.  In any event, alternative pleading would not save Plaintiff's unjust enrichment claim because Plaintiff expressly pleads that the parties' relationship is governed by the Merchant Agreement.  *See, e.g.* Compl., ¶¶ 5, 15-17, 48, 52.  Plaintiff incorporates all of the allegations in the Third

## V. CONCLUSION

For these reasons, the should dismiss Counts I and III of the Third Amended Complaint.

Respectfully submitted,

THOMPSON COBURN LLP

By /s/ David M. Mangian
    Christopher M. Hohn, #44124MO
    David M. Mangian, # 61728MO
    One US Bank Plaza
    St. Louis, Missouri 63101
    314-552-6000
    FAX 314-552-7000
    chohn@thompsoncoburn.com
    dmangian@thompsoncoburn.com

*Attorneys for Defendants Paymentech, LLC, JPMorgan Chase Bank, N.A., and Visa USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2020, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

/s/ David M. Mangian

---

Amended Complaint—including allegations alleging the existence of the Merchant Agreement and supporting its breach of contract claim—into Count III. *See* Compl., ¶ 55.