**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MNG 2005, INC.,                                    )
                                                              )
            Plaintiff,                                    )
                                                              )
            vs.                                              )            Case No. 4:18-cv-01155-JAR
                                                              )
PAYMENTECH, LLC, et al.,                   )
                                                              )
            Defendants.                              )

# MEMORANDUM AND ORDER

This matter is before the Court on two motions to dismiss: one filed by Defendants

Paymentech, LLC ("Paymentech"), JPMorgan Chase Bank, N.A. ("Chase"), and Visa USA, Inc.

("Visa") (Doc. 89); and another filed by Defendant G2 Web Services, LLC. ("G2"). (Doc. 118).

Both motions are fully briefed and ready for disposition. This court will address the two motions

in one Memorandum and Order as they generally concern similar issues.


## I.        FACTUAL AND PROCEDURAL BACKGROUND

In its prior Memorandum and Order (Doc. 67), this Court summarized the alleged facts:

> Plaintiff is a Missouri corporation operating an online cooking-oil business.
> In April, 2018, Plaintiff entered into a contract with Chase and Paymentech—a
> wholly-owned subsidiary of Chase—for credit card processing services (the
> "Merchant Agreement"). (Doc. 57-1).

> Under the TERMS AND CONDITIONS of the Merchant Agreement,
> Plaintiff agreed to comply with "all applicable Payment Brand Rules in effect from
> time to time." (Doc. 59-1 at § 1.3(a)). In addition, Plaintiff promised it would not
> "submit[] any Transaction that [it] knows or should have known to be either
> fraudulent, illegal, [or] damaging to the Payment Brand(s)." (*Id*. at § 1.4(n)).
> Likewise, Plaintiff authorized Chase and Paymentech to "temporarily suspend or
> delay payment to [Plaintiff] of amounts due under this Agreement," until Plaintiff
> satisfies its obligations under the Merchant and "executes all documents reasonably
> requested by Chase [and] Paymentech." (*Id*. at § 4.6(q)(i)-(ii)). Finally, Plaintiff

agreed that Chase and Paymentech "may terminate [the Merchant Agreement] *immediately* if . . . [Plaintiff] engages in conduct that creates or could tend to create harm or loss to the goodwill of any Payment Brand." (*Id*. at § 10.3(i)(i)). Visa is a "Payment Brand." (*Id*. at § 18).

Less than one month after entering into the Merchant Agreement, Chase stopped processing Plaintiff's credit card transactions. Prior to that, Chase withheld more than $66,000 in payments related to purchases by Plaintiff's customers using Visa cards. Chase informed Plaintiff that it had stopped processing transactions and would withhold the payments pursuant to Sections 4.6 and 10.3 of the Merchant Agreement, concluding that the transactions "tend to create harm or loss to the good will of the payment brand." (*Id*. at ¶ 13). Chase represents that it took action after it was informed by Visa of potentially harmful transactions. (Doc. 57 at 3.)

Plaintiff filed suit in Missouri state court and obtained a temporary restraining order against Defendants, prohibiting them from withholding payments and from "making false and defamatory statements about Plaintiff that Plaintiff is engaged in criminal behavior." (Doc. 1-1 at 23). Defendants removed the case to this Court on the basis of diversity jurisdiction and the temporary restraining order was dissolved by consent of the parties. (Docs. 1, 22).

Thereafter, Plaintiff was granted leave to file an Amended Complaint, in which it advanced five claims for relief:

Count I – Breach of Contract by Paymentech and Chase;
Count II – Libel and Slander by Paymentech;
Count III – Conversion by Paymentech;
Count IV – Breach of Contract by Visa; and
Count VI[1] – Tortious Interference with Contract by Paymentech, Chase, and Visa. (Doc. 67 at 1-3).

Defendants moved to dismiss the complaint and the Court granted the motion in part, dismissing Counts II, IV, and VI. (*Id*. at 10). Thereafter, the Court granted Paymentech's motion for reconsideration and dismissed Count III as well, finding that there is no claim for conversion when the property allegedly converted is money. (Doc. 82). In the same order, the Court granted Plaintiff leave to amend its complaint.

Plaintiff then filed its Third Amended Complaint advancing the following claims:

Count I – Unfair Business Practices by Paymentech, Chase, and Visa;
Count II – Breach of Contract by Paymentech and Chase;

---

[1] Plaintiff had voluntarily dismissed Count V by this time. (Doc. 53).

Count III – Unjust Enrichment by Paymentech and Visa. (Doc. 86).

Plaintiff simultaneously moved to join Visa as a necessary party, arguing that although it has no direct contractual relationship with Plaintiff, Visa's presence in the case is necessary to fully address Plaintiff's alleged injuries. (Doc. 85). Plaintiff subsequently sought leave to add another new defendant, G2, arguing that Visa contracts with G2 to monitor and identify companies accepting Visa payments for conduct that violates the Merchant Agreement and assists in maintaining Visa's "Terminated Merchant" list. (Doc. 103). In its motion for leave to join G2, Plaintiff sought to add new claims of libel and slander against both Visa and Chase. (*Id.*). Plaintiff proposed a Fourth Amended Complaint that asserts the following claims:

> Count I – Unfair Business Practices by Paymentech, Chase, Visa, and G2;
> Count II – Breach of Contract by Paymentech and Chase;
> Count III – Unjust Enrichment by Paymentech and Visa.
> Count IV – Libel and Slander by Visa and Chase.[2] (Doc. 104).

This Court granted Plaintiff's motions to join Visa and G2 and docketed Plaintiff's Fourth Amended Complaint. (Doc. 108). The Fourth Amended Complaint (Doc. 104) is operative for purposes of the instant motions to dismiss.

Defendants Paymentech, Chase, and Visa seek dismissal of Counts I, III, and IV (Docs. 89, 112), as this Court has previously denied dismissal as to Count II. (Doc. 67). G2 seeks dismissal of Count I. (Doc. 118).

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[2] Plaintiff also filed a motion to supplement this Fourth Amendment Complaint to include a claim against G2 in Count IV. This motion was denied. (Doc. 126).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "When ruling on a motion to dismiss [under Rule 12(b)(6)], the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

## III.   DISCUSSION

### A.  G2's Motion for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2)

G2 argues that this Court lacks personal jurisdiction over it because Missouri's long-arm statute is not satisfied and G2 does not have sufficient contacts with Missouri to satisfy due process. (Doc. 119 at 3-8). "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). The evidence must be viewed in the light most favorable to Plaintiff, and all factual conflicts will be resolved in Plaintiff's favor when deciding if personal jurisdiction exists. *Id.* at 592 (citing *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE) Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima

4

facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990)).[3]

Missouri's long-arm statute permits this Court to exercise jurisdiction over G2 if the present cause of action arises from (1) the transaction of any business in Missouri; (2) the making of any contract in Missouri; or (3) the commission of a tortious act in Missouri. Mo. Rev. Stat. § 506.500(1)-(3).[4] The Missouri Supreme Court has declared that the Missouri legislature's "ultimate objective [when enacting the long-arm statute] was to extend the jurisdiction of the courts of this state over non-resident defendants to the extent permissible under the Due Process Clause of the Fourteenth Amendment." *State v. Pinnell*, 454 S.W.2d 889, 892 (Mo. banc 1970). Therefore, the "critical factor in our analysis is whether the exercise of personal jurisdiction in this case comports with due process." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000).

---

[3] As G2 notes, there are unique considerations when assessing personal jurisdiction in the context of an antitrust claim under the Clayton As. (Doc. 119 at 11 n.4). Section 12 of the Clayton Act grants nationwide jurisdiction over corporate antitrust defendants provided there are sufficient minimum contacts with the United States as a whole. 15 U.S.C. § 22; *see In re Fed. Fountain, Inc.*, 165 F.3d 600 (8th Cir. 1999). The first clause of Section 12 outlines the venue requirements for corporate antitrust defendants; the second clause establishes nationwide service of process. The Seventh Circuit recently held that Section 12 is a "package deal," and "to avail oneself of the privilege of nationwide service of process, a plaintiff must satisfy the venue provisions of Section 12's first clause." *KM Enterprises, Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013). Put differently, a plaintiff cannot rely on the standard federal venue provision, 28 U.S.C. § 1391, while claiming nationwide personal jurisdiction under the Clayton Act. The Second Circuit and D.C. Circuit reached similar conclusions, while the Third Circuit and Ninth Circuit interpreted the statute more broadly.

It does not appear that the Eighth Circuit has addressed whether the venue and nationwide service provisions of Section 12 should be read together. At least one court in the Eighth Circuit, however, appears to have reached the same conclusion as the Seventh Circuit. *See Willis Elec. Co., Ltd. v. Polygroup Macau Ltd. (BVI)*, 437 F. Supp. 3d 693, 703 (D. Minn. 2020); *see also Sitzer v. Nat'l Ass'n of Realtors*, Case No. 4:19-CV-00332-SRB, 2019 WL 3892873, at *2-3 (W.D. Mo. Aug. 19, 2019) (discussing issue but finding jurisdiction was proper under either interpretation).

Plaintiff has not addressed Section 12 or in any way tethered its jurisdictional claims to the Clayton Act. Plaintiff certainly has not argued that venue is proper under Section 12. Even construing Plaintiff's complaint liberally, there is no allegation that G2 transacts business "of any substantial character" in this district, as required to establish venue under the Clayton Act. *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948). Accordingly, this Court agrees with G2 that Plaintiff must make prima facie showing of personal jurisdiction under the traditional due process requirements.

[4] The other methods for establishing jurisdiction under Missouri's long-arm statute are clearly not applicable to G2.

5

The Due Process Clause of the Fourteenth Amendment requires that G2 have "minimum contacts" with the forum such that the exercise of jurisdiction over it does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 319 (1945). G2's contacts must be sufficiently purposeful that it "should reasonably anticipate being haled into court" in this forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "In judging minimum contacts a court properly focuses on the relationship among the defendant, the forum, and the litigation." *Calder v. Jones*, 465 U.S. 783, 788 (1984).

In the Eighth Circuit, five factors must be considered: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are the most important. *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987).

In its Fourth Amended Complaint, Plaintiff generally alleges that G2 was engaged by Visa to monitor transactions associated with MNG and "has undertaken activities to disrupt MNG's business . . . by targeting employees and officers of MNG and creating a profile of those individuals for the purpose of justifying the deprivation of MNG's access to credit card banking services." (Doc. 104 at ¶¶ 21-23). Plaintiff has not submitted any supporting exhibits, affidavits, or other evidence in support of its claim of personal jurisdiction.

Examining the three most critical factors, it is apparent that this Court lacks personal jurisdiction over G2. The nature and quality of G2's contacts with the state of Missouri are extremely minimal, as Plaintiff only alleges that G2 monitored Plaintiff's financial activity. G2 does not have employees in Missouri, never contacted Plaintiff, and does not appear to have taken

any action whatsoever directly targeted at Missouri. Plaintiff argues that "Defendants Visa, Chase and Paymentech are engaged in substantial business" in Missouri, and "the quality of the contact should be measured by the pervasive impact of G2's actions on its principals." (Doc. 129 at 3). Plaintiff has this exactly backwards; while the actions of an agent may support personal jurisdiction over the principal, the actions of a principal cannot be used to support personal jurisdiction over an agent. *See Move Merch, LLC v. Amaru/AWA Merch., Inc.*, Case No. 4:14-CV-878 CAS, 2015 WL 927468, at *4 (E.D. Mo. Mar. 4, 2015).

The quantity of G2's contacts is also limited. The Court recognizes, as Plaintiff argues, that physical presence in the forum is not technically necessary to establish jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State."). G2, however, has no apparent virtual contact with the forum except for its monitoring of transactions which may or may not occur in Missouri. Applicable Eighth Circuit precedent regarding the existence of personal jurisdiction over individual credit-monitoring activities is relevant to this issue, as G2 essentially provides corporate-level monitoring and reports suspicious activity. In *Aylward v. Fleet Bank*, the Eighth Circuit held that the defendant bank's communication of derogatory credit references regarding plaintiff, a Missouri resident, was not sufficient to establish personal jurisdiction. 122 F.3d 616 (8th Cir. 1997). No personal jurisdiction existed despite the bank having more contacts with Missouri than G2 has here. G2's communications regarding suspicious financial activity involving Plaintiff, a Missouri corporation, do not constitute meaningful contact with Missouri.

The third factor – relation of the cause of action to the contacts – requires that a distinction be drawn between general and specific jurisdiction. Because there is no reasonable argument that G2 may be subjected to this forum's general jurisdiction, which requires continuous and systematic

contacts, this Court only considers whether specific jurisdiction is warranted. Specific jurisdiction exists "when a defendant has purposefully directed its activities to the forum state, and the cause of action relates to those activities." *Speraneo v. Zeus Tech., Inc.*, Case No. 4:12-CV-00578-JAR, 2012 WL 2885592, at *2 (E.D. Mo. July 13, 2012) (internal citation omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.") (internal quotation omitted).

Plaintiff relies heavily on the proposition that this cause of action relates closely to G2's activities in the forum state. It deserves mention, however, that Plaintiff's only claim against G2 is an antitrust injury stemming from Visa's alleged control over the credit card market. There is no allegation that the action directly leading to this injury – G2 informing Visa of suspicious activity by Plaintiff – occurred in Missouri. G2's contracts and interactions with the other Defendants all occurred outside Missouri yet form the primary basis for Plaintiff's claims against G2. Critically, it is G2's "contacts with the forum state which are of importance in determining the propriety of personal jurisdiction, not [G2's] contacts with a resident of the forum state." *Rand & Son Const. Co. v. Thaxton Elec. Co., Inc.*, Case No. 04-0794-CV-W-GAF, 2005 WL 1801714, at *2 (W.D. Mo. July 28, 2005) (citing *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977)). Merely monitoring the financial activities of a Missouri corporation is not sufficient to establish personal jurisdiction when all other relevant conduct has taken place outside this forum.

Because the three most important factors for assessing the presence of personal jurisdiction all indicate such jurisdiction is lacking, exercising personal jurisdiction over G2 would offend

traditional notions of fair play and substantial justice. Resolving all facts in Plaintiff's favor, this Court still cannot make a reasonable inference that personal jurisdiction exists. Accordingly, this Court will order dismissal of G2 from this case.

B.  Count I – Unfair Business Practices (Chase, Paymentech, Visa, and G2)[5]

In Count I of its Fourth Amended Complaint, Plaintiff argues that Visa's involvement in the payment processing and banking industries is so vast and significant that its Terminated Merchant list is tantamount to a blacklist of companies with which no bank or payment processor will do business. (Doc. 104 ¶¶ 34-38). Count I seeks damages against all Defendants "under Section 4 of the Clayton Act; and 15 U.S.C. § 15 for violations of the Sherman Act; and for its unlawful actions stated herein." (*Id.* at ¶ 58). Defendants assert that Count I "contains a hodgepodge of muddled references to unspecified business torts, breaches of contract, and no-specific antitrust terminology." (Doc. 90 at 6).

*Ambiguous Claims*

Defendants first argue that Plaintiff's complaint cites only § 4 of the Clayton Act, creating a private right of action, and 15 U.S.C. § 15 of the Sherman Act, which simply codifies § 4 of the Clayton Act, and therefore fails to adequately identify whether Count I alleges a violation of the Sherman Act, the Clayton Act, or the Robinson–Patman Act, let alone the specific section under which the claim is brought. (Doc. 90 at 6; Doc. 119 at 12). Because each act proscribes different conduct, Defendants argue that the failure to specify the statutory source for Count I is fatal. (Doc. 90 at 6-7; Doc. 119 at 12-13). Sections 1 and 2 of the Sherman Act have unique requirements, yet Plaintiff cites precedent applicable to each section without noting the distinction.

---

[5] Because this Court cannot exercise personal jurisdiction over G2, Count I as against G2 is dismissed.

The Court agrees that the ambiguity of Plaintiff's Fourth Amended Complaint makes it difficult to discern which specific "unjust business practices" Plaintiff alleges. The Court does not believe, however, that this ambiguity alone necessarily compels dismissal at this early stage. Plaintiff's response to the motion to dismiss, arguing that the "Defendants acted together" pursuant to an "agreement," at least suggests that Plaintiff is claiming concerted action under § 1 of the Sherman Act. (Doc. 97 at ¶¶ 6-9).[6]

### *Lack of Antitrust Injury*

Defendants argue that Plaintiff's alleged injuries do not amount to an antitrust injury. (Doc. 90 at 6 (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); Doc. 119 at 14-15 (citing *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006)). An antitrust injury is required to establish antitrust standing, and its requirements "go beyond injury in fact." *Midwest Commc'ns v. Minnesota Twins, Inc.*, 779 F.2d 444, 449 (8th Cir. 1985). Plaintiff must prove the existence of an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick*, 429 U.S. at 489. Plaintiff must have been "the target of the anticompetitive activity, 'not one who has merely suffered indirect, secondary, or remote injury.'" *Lovett v. General Motor Corp.*, 975 F.2d 518, 520-21 (8th Cir. 1992) (quoting *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710 (11th Cir. 1984) (per curiam)).

---

[6] In Plaintiff's response to G2's motion to dismiss, Plaintiff also cites the applicable test for § 2 of the Sherman Act. (Doc. 129 at 8). *See United States v. Grinnell Corp.*, 384 U.S. 563 (1966). G2 correctly notes that Plaintiff's filings also "contain references to language commonly used in reference to typical Section 1 and Section 2 claims." (Doc. 119 at 14).

Plaintiff appears to allege two forms of antitrust injury. First, Plaintiff claims that Defendants' conduct favors large retailers in a way that effectively eliminates any competition from smaller sellers. While Plaintiff was blacklisted for selling CBD and hemp products, Visa allegedly continues to process payments for "the sale of hemp and CBD products" sold by "Costco, Amazon, Nieman March, Sephora, Walmart, and dozens of other larger merchant retailers, but does not make a determination that their sale of CBD related oils and/or products constitute brand damaging behavior." (Doc. 104 at ¶ 47).

If true, the intentional and systematic exercise of Visa's contractual right to remove small retailers from its payment system to benefit large merchants may retrain competition in a way that "has a substantial anticompetitive effect that harms consumers in the relevant market." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2283 (2018). But Plaintiff has not pleaded sufficient factual content from which this Court can reasonably infer that Visa is intentionally and systematically eliminating small vendors to benefit its larger customers. *See Iqbal*, 556 U.S. at 678. Plaintiff's claim amounts to nothing more than a bare allegation that Plaintiff, one particular small seller, has been placed on the Terminated Merchant list.[7]

The Court agrees with Defendants that, at most, Plaintiff alleges an injury to its own business. Even if Visa continues to process the sale of similar products by larger companies, its refusal to do so for MNG—a single small retailer—is not evidence of market-wide anticompetitive behavior. As the Eighth Circuit has explained, "a plaintiff may be targeted and found to have not suffered an injury that is cognizable under the antitrust laws." *Fair Isaac Corp. v. Experian Info.*

---

[7] The Court is mindful that there is some overlap here between the question of whether antitrust injury exists and the merits of Plaintiff's claims. *See generally* Ronald W. Davis, *Standing on Shaky Ground: The Strangely Elusive Doctrine of Antitrust Injury*, 70 ANTITRUST L.J. 697, 775 (2003) (describing cases in which courts have confused issues of antitrust injury and underlying merits of claim). While Plaintiff's argument regarding exclusion of small businesses could theoretically constitute an antitrust injury, Plaintiff has plead no factual content whatsoever suggesting Defendants had any sort of agreement to exclude or penalize small businesses. Whether interpreted as a failure to allege antitrust injury or failure to state a plausible claim for relief, dismissal of this claim is warranted.

*Sols., Inc.*, 650 F.3d 1139, 1145 (8th Cir. 2011). Plaintiff's alleged injury does not flow from conduct that is plausibly claimed as unlawful under the antitrust laws.

Second, Plaintiff argues that Visa's market power is so vast that placing a company on its Terminated Merchant list effectively bankrupts the company because it is unable to transact with any major bank or credit card processor. (*Id.* at ¶¶ 51-55). "[A] mere causal connection between an antitrust violation and harm to [Plaintiff] cannot be the basis for antitrust compensation unless the injury is *directly* related to the harm the antitrust laws were designed to protect." *Lovett*, 975 F.2d at 520 (internal quotation omitted). Plaintiff essentially argues that Visa is extremely large and powerful, so its refusal to do business with Plaintiff is particularly damaging. This injury is not directly related to the harm the antitrust laws were designed to prevent, as there is no indication that Visa's behavior towards Plaintiff was in any way anti-competitive. Accordingly, Plaintiff has not plead factual content allowing this Court to draw a reasonable inference that Plaintiff suffered an antitrust injury.

### *Section 1 of the Sherman Act*

While this Court has found that Plaintiff did not suffer an antitrust injury, there are other deficiencies in the Fourth Amended Complaint that merit consideration. Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. "[Section 1 of the Sherman Act] does not reach conduct that is wholly unilateral." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767-68 (1984). The Supreme Court has also interpreted § 1 "to outlaw only *unreasonable* restraints." *Am. Express Co.*, 138 S. Ct. at 2283 (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)). Where there is no affirmative agreement between competitors to restrict competition or decrease output, Plaintiff must prove the existence of a market restraint that violates

the "rule of reason." *Id*. at 2284. "The rule of reason requires courts to conduct a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s actual effect' on competition." *Id.* (quoting *Copperweld Corp.*, 467 U.S. at 768).

This Court finds that Plaintiff has failed to allege facts establishing concerted action under § 1 of the Sherman Act. Such claims require evidence of conspiracy or agreement, and the Supreme Court has made clear that "a bare assertion of a conspiracy will not suffice." *Twombly*, 550 U.S. at 566. Having carefully reviewed Plaintiff's Fourth Amended Complaint, the only potential allegations of conspiracy are those stating "Visa's actions triggered Chase and G2 to target MNG" and the relevant actions "were taken by Visa, collectively with Paymentech, Chase and G2." (Doc. 104 at ¶¶ 40, 57). Drawing all inferences in Plaintiff's favor, these allegations are not sufficiently specific to allow this Court to draw a reasonable inference that Defendants have violated § 1 of the Sherman Act.

### Section 2 of the Sherman Act

A violation of § 2 of the Sherman Act typically requires (1) the possession of monopoly power in the given market and (2) the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). In addition to the ambiguity as to Plaintiff's antitrust claims generally, there is ambiguity as to the type of monopoly claim Plaintiff brings. There can be violations under § 2 of the Sherman Act for monopolization, attempted monopolization, and conspiracy to monopolize. *See Process Controls Intern., Inc. v. Emerson Process Mgmt.*, 753 F. Supp. 2d 912, 924 (E.D. Mo. 2010).

Because Plaintiff claims that Chase, Paymentech, and G2 are all agents utilized to enforce Visa's monopoly power (Doc. 129 at 8), this Court will assume that Plaintiff is alleging a

conspiracy to monopolize.[8] The elements of such a claim are (1) the existence of a conspiracy, (2) an overt act in furtherance of the conspiracy, and (3) specific intent to monopolize. *Baxley-DeLamar Monuments, Inc. v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1157 (8th Cir. 1988). As discussed above, Plaintiff has failed to sufficiently allege a conspiracy between the parties and therefore cannot make out a § 2 claim. There is simply no plausible allegation within the Fourth Amended Complaint that the Defendants' actions, even if particularly damaging due to Visa's market power, were taken in furtherance of a conspiracy or with a specific intent to monopolize.

This Court is mindful of its obligation to be "reasonably aggressive in weeding out meritless antitrust claims at the pleading stage" given "the unusually high cost of discovery in antitrust cases" and "limited success of judicial supervision in checking discovery abuses." *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (internal quotations omitted). Plaintiff has made an ambiguous antitrust claim which primarily relies on conclusory allegations of anticompetitive conspiracy and monopoly. Plaintiff has failed to adequately allege antitrust injury or state a plausible claim for relief under the Sherman Act. Under the standard established by *Twombly*, dismissal of Count I is appropriate.

## C.   Count III – Unjust Enrichment (Paymentech and Visa)

In Count III, Plaintiff alleges that Paymentech improperly withheld $66,000 from Plaintiff and gave the money to Visa based on an improper determination that Plaintiff was engaged in illegal sales. (Doc. 104 at ¶¶ 67-69). Paymentech and Visa argue that the Court should dismiss

---

[8] The Court notes Defendants' argument that Plaintiff failed to properly define the market. (Doc. 90 at 10; Doc. 119 at 14). The market definition requirements are more lenient, however, under a conspiracy to monopolize claim. *See Alexander v. Nat'l Farmers' Org.*, 687 F.2d 1173, 1182 (8th Cir. 1982). If Plaintiff had intended to proceed under a general § 2 monopoly claim, dismissal for failure to properly define the market would be warranted.

Count III because it is an improper attempt to recast an alleged breach of contract as a tort. (Doc. 90 at 13).

Under Texas law, which governs the Merchant Agreement between Plaintiff and Paymentech, "when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). This is because "[w]hen a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 227 (Tex. App. 2004) (quoting *Fortune Prod. Co.*, 52 S.W.3d at 684). "[U]njust enrichment claims are predicated on the absence of an express contract controlling the circumstances," and they do not lie when such a contract is present. *Id.* (quoting *Inglish v. Prudential Ins. Co.*, 928 S.W.2d 702, 706 (Tex. App. 1996)).

The relationship between Plaintiff and Paymentech is governed by the Merchant Agreement and any assertion that money was improperly withheld must be pursued as a breach of that contract. Plaintiff's response argues that the Merchant Agreement "was never followed and/or honored by Defendants, in material respects." (Doc. 97 at ¶ 28). This is precisely why unjust enrichment is the wrong avenue for Plaintiff's claims against Paymentech; the alleged failure to follow the Merchant Agreement is a clear breach of contract claim and cannot be pursued under a theory of unjust enrichment.

As this Court previously held, however, Plaintiff and Visa do not have a contractual relationship which would bar recovery under a quasi-contract theory. (*See* Doc. 67 at 7-8 (dismissing Plaintiff's brief of contract claim against Visa)). In such instances, claims in quasi-contract are an appropriate vehicle to recover money unjustly held. Visa argues that the Merchant Agreement still governs the withholding of funds and, therefore, this Court should also grant

dismissal as to Visa. (Doc. 102 at 8 n.2). At this early stage, the Court will not dismiss Plaintiff's unjust enrichment claim against Visa merely because it relates to a contract to which Visa was not a party. Accordingly, the Court will dismiss Count III as against Paymentech but not as against Visa.

D.  Count IV – Plaintiff's Defamation Claims against Chase and Visa[9]

In its Fourth Amended Complaint, Plaintiff alleges that Chase and Visa committed defamation. (Doc. 104 at ¶¶ 70-77). Defamation requires "(1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015).[10]

Plaintiff claims that Chase "placed MNG on a blacklist." (Doc. 104 at ¶ 72). Chase responds that this does not constitute a false statement of fact. In dismissing Plaintiff's defamation claim against Paymentech, this Court previously stated that "[a]ppearing on a list of vendors excluded from Defendants' payment processing system is not a 'false statement of fact' but rather a statement of Plaintiff's current relationship with Defendants." (Doc. 67 at 6). The same logic applies here – Plaintiff may question the facts underlying Chase's decision to place Plaintiff on the Terminated Merchant list, but that does not make the placement itself a false statement of fact. As a factual matter, Plaintiff was placed on the Terminated Merchant list. Therefore, Plaintiff has

---

[9] In their response to G2's motion to dismiss, Plaintiff again requests that this Court "incorporate G2 [ ] into Count IV based on Plaintiff's inadvertent omission." (Doc. 129 at 9). For the same reasons discussed in this Court's previous Order denying Plaintiff's motion for leave to file a fifth amended complaint (Doc. 126), and because this Court lacks jurisdiction over G2 regardless, the request is denied.

[10] As this Court has previously noted, claims arising from or related to the Merchant Agreement are governed by Texas law. (Doc. 67 at 4). Because Visa is not a party to the Merchant Agreement, however, tort claims against Visa are governed by Missouri law. There is no material difference applicable to this motion to dismiss in the requirements to establish a defamation claim under Missouri or Texas law, however. *See State ex rel. BP Prods. North America, Inc. v. Ross*, 173 S.W.3d 922, 929 (Mo. banc 2005) (Defamation requires "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation.").

not plausibly alleged publication of a false statement of fact, and dismissal of Plaintiff's defamation claim against Chase is warranted.

As to Visa, however, Plaintiff alleges that "[o]n or about April 25, 2018, Visa notified Chase that [Plaintiff] was engaged in illegal activities and was the subject of a law enforcement inquiry." (Doc. 104 at ¶ 71). In its order dismissing Plaintiff's earlier defamation claim, this Court concluded that defamation could not rest on a statement made by Paymentech to MNG (actionable defamation requires publication to a third party), nor on the true statement that Plaintiff was placed on the Terminated Merchant list. (Doc. 67 at 6). Visa's alleged statement that Plaintiff engaged in illegal activities and was the subject of a law enforcement inquiry, however, is potentially a false statement of fact published to a third party.

Visa also contends that Plaintiff has not adequately alleged damages. Under Missouri law, "proof of actual reputational harm is an absolute prerequisite in a defamation action." *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1053-54 (8th Cir. 2012) (quoting *Kenney v. Wal-Mart Stores, Inc.*, 100 S.W.3d 809, 817 (Mo. 2003)). According to Plaintiff, Visa's statement "caused Chase to terminate its business with [Plaintiff], setting in motion a chain of events which resulted in the perpetuation and dissemination of this libelous and slanderous statement industry-wide." (Doc. 104 at ¶ 74). Plaintiff specifically alleges that Visa's statements cast doubt upon Plaintiff's character in the business community and resulted in losing access to the banking system. (*Id.* at ¶¶ 73-76).

In *Riley v. Riley*, a Missouri court held that "because [plaintiff] alleged that her reputation in the community was damaged, she sufficiently pleaded damages for her defamation action." 340 S.W.3d 334, 338 (Mo. App. 2011). At this early stage, drawing all reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently alleged that Visa's statements damaged Plaintiff as

17

required to state a claim of defamation. "Whether or not [Plaintiff] can meet [its] burden of proof is a question of fact to be tested by summary judgment or trial, and not by motion to dismiss." *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 314 (Mo. banc 1993).

## IV.     CONCLUSION

Having carefully considered the somewhat heightened pleading standards applicable to Count I, this Court has determined that Plaintiff's ambiguous antitrust arguments do not state a plausible claim of antitrust injury or violation of the Sherman Act. Dismissal of Count III against Paymentech is warranted since Plaintiff's claim truly arises under the Merchant Agreement, but Plaintiff may pursue its unjust enrichment claim against Visa. Finally, Plaintiff's defamation claim may also proceed against Visa because Plaintiff has properly alleged publication of a false statement of material fact to a third party and associated damages.

The alleged injuries underlying Plaintiff's claims in this case arise from Plaintiff's contract with Chase and Paymentech and associated tort claims against Visa. It is appropriate, therefore, that those will be the only claims remaining in this case following this Memorandum and Order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Paymentech, Chase, and Visa's Motion to Dismiss (Doc. 89) is **GRANTED in part and DENIED in part.** Count I is dismissed against all Defendants. Count III is dismissed as to Paymentech and denied as to Visa. Count IV is dismissed as to Chase and denied as to Visa.

**IT IS FURTHER ORDERED** that Defendant G2's Motion to Dismiss Fourth Amended Complaint (Doc. 118) is **GRANTED** and Plaintiff's claims against G2 are hereby **DISMISSED without prejudice.**

Accordingly, Plaintiff's remaining claims in this case include Count II against Paymentech and Chase, Count III against Visa, and Count IV against Visa.


Dated this 9th day of November, 2020.


                                      _____
                                      JOHN A. ROSS
                                      UNITED STATES DISTRICT JUDGE

19